## MARTIN v. ASTIN.   (No. 958–4774.)

Commission of Appeals of Texas, Section A.
June 4, 1927.

1. **Vendor and purchaser** ⬳232(13)—**Son's exclusive possession of land after mother's removal constituted notice of his title under unrecorded deed.**

Son's possession of land, part of which he had cultivated as his mother's tenant while she lived on land, but which after deed he occupied exclusively, constituted notice of his interest under the unrecorded deed.

2. **Homestead** ⬳129(1)—**Occupation by husband and wife as home operates as notice of title to which homestead interests attach.**

Ordinarily, occupation and use of land by husband and wife as a home operate as notice of the title or interest to which the homestead rights attach.

3. **Homestead** ⬳129(1)—**Due title registration concurring with occupancy constitutes notice of husband's inability to bind wife respecting homestead.**

Due registration of title to which homestead interests attach, concurring with occupation and use of land as home, constitutes notice of all facts which in law deprive husband of power to bind his wife in respect to the property.

4. **Homestead** ⬳129(1)—**One charged with notice of husband's inability to bind wife may not rely on husband's statements as to her homestead rights.**

One who is by registration of title and use of premises as home charged with notice of husband's lack of power to bind wife in respect to the property is not warranted in relying on husband's statements as to wife's rights in property.

5. **Homestead** ⬳122—**Husband's fraudulent disclaimer of ownership of homestead, to which wife is not party, does not estop him from asserting ownership.**

Husband's fraudulent disclaimer of ownership in lands occupied by himself and wife as a home under recorded deed, to which his wife is not a party, inducing third person to buy the property at execution sale under a judgment against the husband's grantor, does not estop him from asserting homestead rights in denial of the validity of the purchaser's title.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Homestead ⟨⟩122—Rights of husband and wife in homestead are inseverable as respects separate estoppel.**

Rights of husband and wife in the homestead are inseverable, so that one may not be precluded from asserting and enjoying his or her rights in the property without affecting the other.

**7. Homestead ⟨⟩212—Wife is not necessary party to third person's suit to recover homestead, since she may profit by husband's effort to defend title.**

Wife is not a necessary party to suit by a third person to recover possession of the family home under a claim of title, since, though adverse judgment would not bind her, she may profit by her husband's successful effort to defend the title.

**8. Homestead ⟨⟩214—Evidence that defendant paid taxes on homestead in name of record owner while holding deed unrecorded held immaterial in suit by purchaser at execution sale.**

Evidence that defendant claiming in present suit to have been owner of land occupied as a homestead under a deed not then recorded paid taxes in name of record owner *held* not material, where his fraudulent representations could not operate as an estoppel, his wife not having been party thereto and the deed having been recorded prior to the plaintiff's purchase at execution sale.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by J. D. Astin against A. Martin and others. The Court of Civil Appeals reversed a judgment of the district court for defendants and remanded the cause (289 S. W. 442), and the defendant, A. Martin, brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

John H. Tate, of Giddings, and W. A. Morrison, of Cameron, for plaintiff in error.

Thos. W. Thompson, of Giddings, for defendant in error.

HARVEY, P. J. We adopt the statement of the case as made by the Court of Civil Appeals (289 S. W. 442), which is as follows:

"Suit by J. D. Astin, appellant, against A. Martin and others, appellees, to recover 138 acres of land in Lee county. Trial to jury. Judgment for appellees on directed verdict.

"M. N. Martin, the mother of appellee, A. Martin, is common source of title. Appellant claims under an execution sale foreclosing an abstract of judgment lien under a judgment in favor of Lee County State Bank of Lexington, Tex., against M. N. Martin. The judgment was recovered April 20, 1923. An abstract of judgment was recorded and indexed in Lee county on April 26, 1923. Execution issued September 4, 1923, levied on the same date, and the land was sold October 2, 1923, to one Shaffer, who con-

veyed it to appellant. The record shows that Shaffer in fact purchased for appellant.

"Appellee claims under a deed from M. N. Martin, executed October 17, 1921, but not recorded until September 13, 1923.

"Two important questions are presented by the appeal: First, whether the possession of A. Martin on the date the judgment lien attached was notice to the bank of his claim of title under the unrecorded deed from his mother; and, second, whether acts and representations of A. Martin to appellant prior to the latter's purchase at execution sale were sufficient to raise the issue of estoppel against A. Martin to assert his title.

"The evidence with reference to A. Martin's possession of the property is without material controversy. The land in question was part of original holdings of A. Martin's father, W. H. Martin, aggregating 480 acres, the community property of W. H. and M. N. Martin. W. H. Martin died intestate prior to 1913, and the community property passed, one half to M. N. Martin, and the other half to A. Martin and three other children of W. H. and M. N. Martin. There was a partition among the heirs, by which 240 acres in the northern portion of these holdings was set aside to M. N. Martin, and four 60-acre tracts in the southern portion to the four children in severalty. M. N. Martin's 240 acres consisted of two adjoining tracts out of two separate surveys. The northern tract, being that in suit, was in the Moran survey, and known as the Bounds tract, containing 138 acres. The southern tract, containing 102 acres, was in the Peavyhouse survey. Originally there had been a line fence between the two tracts, but this was taken down many years ago and the whole was under one inclosure. The Bounds tract appears to have been better land and was cultivated in the eastern portion. There was also some cultivation in the southern tract. The old home place of W. H. and M. N. Martin was on the Peavyhouse tract, some two or three hundred yards south of the Bounds line. A. Martin lived with his parents up to the time of his father's death, and afterwards he lived with his mother and cultivated or assisted in cultivating or in renting the land. He married in August, 1913, or 1914, and moved into the home place with his mother. From that time up to the year 1921 he lived on the place and cultivated the land as a tenant, except that he moved away to Thorndale for one year and for two years he lived in the Rio Grande Valley. During part of this time he lived in the house with his mother and part of the time in a small house in the eastern portion of the Peavyhouse tract. On returning from the Rio Grande Valley he moved into a little house near the home place, where he resided until the spring of 1921, when he moved this little house onto his own 60-acre tract, where he and his family lived until December, 1921, or January, 1922. During the year 1921 he was a tenant of his mother for the 138 acres, cultivating a portion of the land. When he moved back on to the Peavyhouse tract in the winter of 1921–22, he first moved into the house with his mother, who remained there a short while, and then moved out and went to live with another son. From that time on she did not live on any of the property, but made occasional

visits to A. Martin, who remained on the land from the winter of 1921-22, continuously residing on the Peavyhouse tract with his family, using and cultivating both 'tracts. The deed from Mrs. Martin to A. Martin conveyed her entire 240 acres. The evidence is clear that up to and at the time Mrs. Martin deeded A. Martin the land, the latter was tenant of the former, either from year to year or at will, and he was not then living on any of the property, but moved on to the Peavyhouse as above stated shortly thereafter. The record does not show that either the bank, Shaffer, or appellant had any knowledge or intimation of the existence of Mrs. Martin's deed, nor any notice thereof further than than which would be imputed from A. Martin's possession, or the recording of that deed on September 13, 1923, which was after the execution was levied and the property advertised for sale."

[1] We approve the holding of the Court of Civil Appeals to the effect that the possession by A. Martin of the land in controversy constituted notice to the bank of the title held by him under his unrecorded deed from his mother. It is necessary, therefore, that we discuss only the question whether A. Martin is estopped, by virtue of his fraudulent acts and representations hereinafter stated, from asserting the title held by him to the land in controversy under the deed from his mother. In addition to the facts already stated, the evidence with reference to this question is substantially as follows: The execution was levied upon the 138-acre tract in question with another tract of 80 acres as the property of Mrs. M. N. Martin, and both tracts were advertised to be sold under such execution on October 2, 1923. Astin, the defendant in error, was a neighbor of A. Martin, had lived in the community a long time, and at one time had been a tenant of the M. N. Martin lands and knew in a general way of the partition of the estate of A. Martin's father. He was acquainted with the two tracts that were set aside to Mrs. M. N. Martin in the petition, and knew that A. Martin, with his family, was and had been living on the land and using and cultivating it. On September 30, 1923, A. Martin had a conversation with Astin in which he, in effect, disclaimed any ownership of the land, and induced Astin to buy it in at such execution sale. The wife of A. Martin was not present and knew nothing of such statements and representations of her husband. Astin had Shaffer to buy the property for him at such execution sale, relying on the statements and representations of A. Martin, and without notice of the deed from M. N. Martin other than such constructive notice as the due record of the deed charged him with. As has been stated, this deed was recorded on September 13, 1923, and therefore was duly of record when A. Martin and Astin had the conversation mentioned above. The consideration which A. Martin paid M.

N. Martin for the land conveyed to him by this deed was $900.

[2] Ordinarily the occupation and use of land by the husband and wife as a home operate not only as notice of the homestead character of the property, but also of the title or interest to which the homestead rights attach. It seems to be settled, however, that whenever the homestead rights are attached to a community interest in the lands, under some circumstances, and notice to third persons of this interest depends exclusively upon such occupation and use, the fraudulent acts or conduct of the husband will preclude the assertion of such interest, either by the husband or the wife, as illustrated by the cases of Sparks v. Texas Loan Agency (Tex. Sup.) 19 S. W. 256; Ranney v. Miller, 51 Tex. 263, and like cases. But we have no such case here. At the time Martin made the statements in question, and at the time of the execution sale, Martin and his wife with their five children were occupying and using the land in controversy as their home, of which fact Astin had actual knowledge as well as constructive notice; and the deed exhibiting the title to which the homestead rights attached was duly of record.

[3, 4] Whatever may be the extent and effect of notice resting exclusively upon the fact of physical occupation and use of the home by the husband and wife (see Land Co. v. Cooper [Tex. Civ. App.] 67 S. W. 173), there should be no doubt that whenever due registration of the title to which the homestead rights attach concurs with such an occupation and use, the world is thereby put on notice of all facts which in law deprive the husband of power to bind the wife in respect to the property, though it be community property, or to affect her rights therein by anything he may say or do. In such a case, a third person, dealing with the husband alone, is charged with notice of the full extent of the wife's rights in the property and of the husband's lack of power to impair them. Being thus charged with notice of this lack of power in the husband, such third person is not warranted in relying on the husband's acts or statements as excusing him from further inquiry with respect to the wife's rights in the property.

[5, 6] It is manifest, therefore, that no estoppel, on account of the fraud of A. Martin, may be maintained, which in any wise affects the homestead rights of his wife in the property in question—she not being privy to the fraud. It is equally manifest from a consideration of our homestead laws and of the reciprocal rights and obligations existing between the husband and wife on account of the marriage relation that the respective rights of the husband and wife in the home, though in a sense personal to each

distinctively, are, in essential respects, so correlated and interdependent that one may not be precluded from asserting and enjoying his or her rights in the property without affecting the rights of the other. Hence, in the case of Stallings v. Hullum, 89 Tex. 434, 35 S. W. 3, it was held that a deed executed by the husband, by which he attempted to make conveyance of the property constituting the homestead of himself and wife, was inoperative so long as the wife's right of homestead in the property continued to exist. The plain inference to be drawn from the language of that decision is that the deed was not only inoperative as a conveyance during the existence of the wife's homestead rights in the property, but that it did not afford ground for estoppel of the husband, or invest the grantee with any rights involving the property during the existence of the homestead rights of the wife. The inseverable nature of the respective rights of the husband and wife in an existing homestead is indicated by the following excerpt from the court's opinion in that case:

"The alienation of the homestead by a married man without the consent of the wife, evidenced in the manner required by law, being prohibited, his attempted conveyance without her joining in the deed is void, in so far as it in any manner affects her interests. The mere privilege of possession and enjoyment is not the measure of her right in the homestead. With the concurrence of her husband she may exchange it for another; she may consent to a sale with a view to the investment of the proceeds in a new homestead, or in view of her husband's receiving such consideration as she may deem an adequate compensation for the alienation of the shelter for the family. * * * It is not practicable to carve out her interest in the property; and it is our opinion that the framers of the Constitution never intended that this should be done."

The inseparability of the homestead rights of the husband and the wife in the family home, though distinctive to each of them, was noticed in the opinion of the Supreme Court in the case of Campbell v. Elliott, 52 Tex. 151. Although the question in that case involved a mortgage that had been executed by the husband on the homestead, and therefore has no direct bearing on the one under consideration here, the court took occasion to point out the manner in which the rights of the husband and wife, respectively, in the existing family home, are so interwoven, one with the other, in the homestead fabric as to constitute an inseparable mass. The court said:

"According to Mr. Freeman, the homestead estate is more analogous to an estate by entirety than that of joint tenancy, they having alike the four unities of interest, title, time, and possession, while the estate, by entirety, has the fifth unity of person; that this, unlike an estate by joint tenancy, can be vested in but two natural persons only, who are regarded as but one in law; who are seized not of an undivided moiety of the whole, but each takes an entirety, and are seized per tout, but not per my; who cannot alienate separately, but must alienate jointly; who cannot sever at pleasure, but hold an estate which, while it remains theirs, is inseverable; who cannot have partition unless in a divorce proceeding severing their matrimonial relations, and who have not the right of survivorship, but upon the decease of either spouse the other continues to hold the entire homestead estate as such."

The proposition that in a case of this kind the husband will not be precluded, because of his fraud, from asserting the homestead rights of himself and wife (including, of course, the title to which those rights attach), finds a measure of support in the decision of the Supreme Court in the case of Eckhardt v. Schlecht, 29 Tex. 132; which decision, though not directly in point, contains language that is persuasive. In that case, in which the husband alone was asserting the homestead rights of the family, the court said:

"It cannot of course be supposed that the fraudulent declarations or conduct of the husband, to which the wife is not party, will be held in equity to pass the title to the homestead, or create any charge upon it which the husband could not make by deed. Nor could any one be found who would insist that the fraud of the husband will bar its recovery for the use of the family. To do this, if it can be even then, there must be fraud both on the part of the husband and wife, for which no other adequate redress can be afforded." (N. B.—The above quotation is taken from the court's opinion as it appears recorded in the minutes of the Supreme Court, which we have examined. Comparison of same with the report of the opinion as it appears in the printed volume of the Reports, discloses clerical errors in the latter.)

After mature reflection and due consideration of relevant laws, it is our opinion that in a state of facts such as disclosed in the case at bar, the husband, because of his fraudulent conduct to which the wife is not party or privy, cannot be estopped from asserting the homestead rights of himself and wife; which rights necessarily embrace their title or interest in the property. Astin was charged with notice of every fact upon which the family homestead rights were based, and the full extent of such rights. Being so charged he must be held to notice of the inseparable nature of those rights and the inability of Martin to affect them, so long as the property continued to be the homestead of the family. Martin, as head of the family, cannot be estopped from defending the family home, even as against the effects of his own wrongful conduct.

[7] The holding of the Court of Civil Appeals to the effect that the wife of A. Martin is a necessary party to this suit is erro-

neous. Although she would not be bound by an adverse judgment herein, she may enjoy the benefits which flow from the efforts of her husband in defending the family home.

[8] The Court of Civil Appeals also erred in reversing the judgment of the trial court on the ground of exclusion of testimony showing the rendition by A. Martin in the years 1922 and 1923, of this property for taxes in the name of M. N. Martin, and of testimony as to the examination of the tax rolls by the attorney for the bank before the execution in question was levied. The facts to which this testimony relates could have no estoppel effect, for reasons which we have set forth in this opinion if for no other reason.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, as recommended by the Commission of Appeals.