**In re O.J. OSBORN and Roma Lou Osborn, Debtors.**

**O.J. OSBORN and Roma Lou Osborn, Appellants,**

v.

**DURANT BANK & TRUST COMPANY, Appellee.**

No. 91–7008.

United States Court of Appeals, Tenth Circuit.

May 13, 1994.

Order Denying Rehearing June 24, 1994.

Rick Poland of Underwood, Bardrick, Poland & Snyder, Oklahoma City, OK, for appellants.

Mark A. Craige of Craige & Horgan, Tulsa, OK, for appellee.

Before EBEL and HOLLOWAY, Circuit Judges, and OWEN,* District Judge.

HOLLOWAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

■ The two debtors in this bankruptcy action, O.J. Osborn and Roma Lou Osborn ("the Osborns" or "the Debtors"), appeal from a ruling of the district court affirming the bankruptcy court's rejection of their claim of a homestead in realty in Dallas, Texas. A bankruptcy court order allowing or disallowing a homestead is a final appealable order under 28 U.S.C. § 158(a)–(c). *See Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir. 1985); *In re White,* 727 F.2d 884 (9th Cir. 1984). Because the facts of this case are crucial to our holdings we set them out in detail below.

---

* Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

## I. Factual and Procedural Background

In 1956 the Osborns purchased and claimed as their homestead real estate located at 10818 Lake June Road in Dallas, Texas ("the Texas property"). The Osborns resided at the Texas property continuously from 1956 until this litigation began.

Beginning in the 1960s, the Osborns began to acquire land in Bryan County, Oklahoma ("the Oklahoma property"), intending to reside there and engage in farming and ranching once they had retired. The Osborns did not own a dwelling on the Oklahoma property. At the time this appeal was taken the Oklahoma property was subject to mortgages in excess of its value and was being liquidated by the bankruptcy trustee. When the litigation commenced in the bankruptcy court, the Texas property was unencumbered.

The Osborns filed a Chapter 12 proceeding in 1987 in the bankruptcy court of the Eastern District of Oklahoma. That action was subsequently dismissed. Durant Bank & Trust Co. ("the Bank"), holder of the mortgages on the Oklahoma property, then filed an involuntary Chapter 7 proceeding against the Osborns. That bankruptcy proceeding was later converted to a Chapter 11 proceeding in February 1988 on motion of the Debtors. This proceeding was eventually reconverted to Chapter 7.

During the pendency of the Chapter 11 voluntary proceeding, the Osborns filed their original Schedule B–1 listing two pieces of property: (1) Texas property described as "10818 Lake June Road, Dallas, Texas" and valued at $70,000; and (2) Oklahoma property valued at $238,950. *See* R. at 23. The accompanying Schedule B–4 listed as exempt, *inter alia,* a "Homestead," followed by a citation to "31 Okl St. Ann § 31 et sq.," and stating the property was valued at $70,000. The schedule did not specify the location of that homestead. *See* R. at 28.[1] The Schedule B–4 also listed other exempt property,

with a citation to the same Oklahoma statute, including furnishings, personal effects, and an automobile.

Many of the documents relating to the loans on the Oklahoma property listed an Oklahoma address for the Osborns. The original schedules filed in both the Chapter 12 proceeding and the involuntary Chapter 7 proceeding in the instant case listed the Oklahoma property as the Osborns' mailing address. Roma Lou Osborn later explained that she thought giving the Oklahoma property as their mailing address was proper because the bankruptcies were intended to reorganize the Osborns' farming operations, which were conducted on the Oklahoma property. *See* R. at 74–75. This testimony was not contradicted. The pleadings in the Chapter 7 and Chapter 11 cases also listed the Osborns as having an Oklahoma address. Finally, all of the notes, security agreements, Uniform Commercial Code financing statements ("UCC–1s"), and other documents relating to the Oklahoma property which the Osborns signed showed an Oklahoma address.

Roma Lou Osborn made no express representation that the Oklahoma property was her homestead. She has testified on several occasions that she initially had no understanding of the legal meaning of the word "homestead," and that she did not find out that homesteads are exempt from certain types of execution under state law and the Bankruptcy Code until the fall of 1989. *See* R. at 74–82.

O.J. Osborn has on several occasions made statements indicating that he intended to claim the Oklahoma property as his homestead. During the first meeting of creditors on March 25, 1988, held pursuant to 11 U.S.C. § 341 (1988),[2] in the Chapter 12 proceeding Mr. Osborn testified that he and his wife lived on the property in Bryan County. R. at 177–78. In examining Mr. Osborn, the Bank's attorney[3] referred to Osborn's

---

**1.** Title 31 of the Oklahoma Statutes governs homesteads and exemptions, but there is no § 31 of that title. The correct authority for the creation of a homestead under Oklahoma law would be 31 Okl.Stat.Ann. § 1, et seq.

**2.** Henceforth, all references to the Bankruptcy Code will be in the form "Bankruptcy Code § xxx."

**3.** At this hearing where Mr. Osborn was questioned, appearances were entered for the trustee by Ms. Echols; for the Debtor by counsel, Mr. Lerblance; and for the Creditor by counsel, Mr. Craige.

"Schedule 34" which claimed certain property as exempt. The attorney said it did not show a legal description but that "it looks like you're trying to claim the homestead in Dallas as exempt, or do you intend your property in Oklahoma as exempt homestead?" Osborn replied: "I intend to claim my property in Oklahoma as my exempt homestead." R. at 178. Mr. Osborn was asked whether there were any mortgages against the Oklahoma property, to which he answered that there were not.[4]

In addition, although the Osborns had registered the Texas property as their homestead with the Dallas Central Appraisal District, see R. at 206, Mr. Osborn filed an application for a homestead declaration for the Oklahoma property in 1970. That application was denied. He again tried to get the Oklahoma property declared as his homestead in 1988 in connection with a tax challenge. That attempt also failed because the Bryan County Board of Equalization found that the Osborns did not reside on the Oklahoma property. See R. at 218.

On July 6, 1988, the bankruptcy court granted the Bank an adequate protection lien on the Texas property, pursuant to Bankruptcy Code § 364, and allowed the Debtors to use the cash proceeds from the sale of some of their cattle in order to maintain the herd, all of which were subject to the Bank's security interest. At that time the Osborns did not object that, as their homestead, the Texas property could not be encumbered by the lien.

The Bank later filed an adversary proceeding to deny the Osborns a discharge of their debt to the Bank. The parties then submitted an agreed journal entry of judgment which was entered by the bankruptcy court on January 9, 1990. That judgment provided that a debt of $225,000 was exempted from discharge. As part of the agreed judgment, the parties asked the Farmers' Home Administration ("FmHA") to reguarantee the loan. The judgment provided that:

> In the event that the FmHA shall fail to pay the claim to be filed or fail to issue a

subsequent guarantee on the balance of the obligation, [the Bank] shall have the right to execute upon this judgment and take any other legal action as it may deem reasonable, appropriate and necessary to enforce its rights.

The FmHA refused to guarantee the loan. The Osborns then sought relief from the agreed judgment pursuant to Fed.R.Civ.P. 60(b). The bankruptcy court denied the Rule 60(b) motion and the district judge affirmed.

On January 29, 1990, the Osborns filed another amendment to their Schedule B–4 to claim the Texas property as their exempt homestead, and the Bank objected. The bankruptcy judge denied that amendment. The Osborns timely appealed that decision to the district court, which affirmed by an order dated December 21, 1990. We treat the findings and reasoning underlying these orders later. The Osborns timely appealed to this Court.

On August 1, 1990, during the pendency of the Osborns' appeal to the district court, the bankruptcy court entered an order authorizing the trustee to sell the Texas property claimed as a homestead. On September 21, 1990, at the Osborns' request, the bankruptcy court stayed the sale on the conditions that the Osborns maintain insurance payments on the Texas property and pay "reasonable rent" of $450 per month to the Bank. That stay expired when the Osborns failed to comply with its conditions. On January 15, 1991, the trustee sold the Texas property at auction for $27,000. The Bank moved this court to dismiss the instant appeal as moot. That motion was submitted to us along with the other issues on appeal.

## II. Issues on Appeal and Standard of Review

This appeal presents three principal issues: (1) whether the appeal is moot in light of the completed sale of the Texas property; (2) whether the bankruptcy court's ruling, affirmed by the district court, was in error in refusing to allow the Debtors to amend their

---

4. This answer by Mr. Osborn appears to have been in error. The Schedule 2–A filed by the Osborns listed Durant Bank & Trust as the holder of a security interest in real property in the

amount of $368,794.92. The only real property approaching that value was the Oklahoma property. See R. at 23–24, 68.

schedule of exemptions to claim the Texas realty as their homestead; and (3) whether the bankruptcy court's ruling, affirmed by the district court, was in error in denying on the merits the Debtors' claim of the Texas homestead.

We review legal determinations by the bankruptcy court *de novo*,[5] while we review its factual findings under the clearly erroneous standard. *See In re Burkart Farm & Livestock*, 938 F.2d 1114, 1115 (10th Cir.1991). It is especially important to be faithful to the clearly erroneous standard when the bankruptcy court's findings have been upheld by the district court. *See In re Niland*, 825 F.2d 801, 806 (5th Cir.1987). However, when a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review. *See id.*

## III. Mootness

The Bank has moved for dismissal under Fed.R.App.P. 27 and Tenth Circuit Rule 27.2.1, claiming that the Osborns' appeal is moot in light of the sale of the Texas property to a third party. We hold that because it is not impossible for the court to grant some measure of effective relief, the Osborns' appeal is not moot.

It has long been settled that a federal court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). *See also Church of Scientology of California v. United States*, — U.S. —, —, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (citing cases). For that reason, if an event occurs

while a case is pending on appeal that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party, the appeal must be dismissed. *Church of Scientology*, — U.S. at —, 113 S.Ct. at 449 (quoting *Mills*, 159 U.S. at 653, 16 S.Ct. at 132–33).

In the context of bankruptcy, any analysis of mootness must consider not only the remedies available under the Bankruptcy Code but also those that may be available under state law. This is because bankruptcy is basically a procedural forum designed to provide a collective proceeding for the sorting out of nonbankruptcy entitlements;[6] consequently, the rights of parties to a bankruptcy proceeding are "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). *See also Ohio v. Kovacs*, 469 U.S. 274, 285–86, 105 S.Ct. 705, 711, 83 L.Ed.2d 649 (1985) ("the classification of Ohio's interest as either a lien on the property itself, a perfected security interest, or merely an unsecured claim depends on Ohio law") (O'Connor, J., concurring).

In order to protect the public's interest in finalizing bankruptcy sales to encourage buyers to purchase the debtor's property, to prevent injury to creditors, and to insure that adequate sources of financing remain available, § 363(m) of the Bankruptcy Code protects the validity of certain sales by the trustee from the potential consequences of an appeal, if the order authorizing the sale is not stayed.[7] *See In re Sullivan Cent. Plaza, I, Ltd.*, 914 F.2d 731, 734 (5th Cir. 1990), *aff'd on reh'g*, 935 F.2d 723 (5th Cir. 1991); *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1389 n. 10 (5th Cir.1981). By removing those remedies that would affect the validity

---

5. The *de novo* standard also applies to the lower court's determinations of state law. *See Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

6. *See* Jackson, *Bankruptcy, Non–Bankruptcy Entitlements, and the Creditors' Bargain*, 91 Yale L.J. 857, 859–71 (1982); Baird & Jackson, *Corporate Reorganizations and the Treatment of Diverse Ownership Interests: A Comment on the Adequate Protection of Secured Creditors in Bankruptcy*, 51 U.Chi.L.Rev. 97, 101–09 (1984).

7. Section 363(m) provides:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

of a sale to a good faith purchaser,[8] § 363(m) moots some appeals, namely, those in cases where the only remedies available are those that affect the validity of the sale. *See In re Sullivan Cent.*, 914 F.2d at 734 n. 9. However, where state law or the Bankruptcy Code provides remedies that do not affect the validity of the sale, § 363(m) does not moot the appeal. *See In re Victoria Station Inc.*, 88 B.R. 231, 234–35 (Bankr. 9th Cir.1988) (appeal not moot under § 363(m) when good faith purchaser would not be prejudiced by the outcome of the appeal), *aff'd*, 875 F.2d 1380 (9th Cir.1989). *See also American Grain Ass'n v. Lee–Vac, Ltd.*, 630 F.2d 245, 248 (5th Cir.1980) (appeal would not be moot if damages resulting from breach of lease agreement had been sought) (decided under former Rule 805).[9]

We look to Texas law to determine whether there are remedies available to the Osborns that would not affect the validity of the sale. The Osborns' Objection to Motion to Dismiss this appeal as moot states their position on relief sought. Debtors' Objection at 1–2. They appear to recognize the bar of 11 U.S.C. § 363(m) against upsetting the sale of their Texas property. Nevertheless they argue that a ruling in their favor would support recovery of the value of their homestead from proceeds of the sale. Their position in seeking monetary relief has support in circumstances like those presented by this record based on Texas constructive trust principles. The flexibility and breadth of those principles are shown in the opinion of the Supreme Court of Texas in *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974):

Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice.... A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be pos-

sessed by another.... Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted. *Magee v. Young*, 145 Tex. 485, 198 S.W.2d 883 (1946). *See* 89 C.J.S. Trusts § 139 at 1020; 54 Am.Jur.Trusts §§ 218, 219, 220. In *Magee v. Young, supra*, this court, indicating the flexibility of the constructive trust remedy, stated, "[i]n order to satisfy the demands of justice, courts of equity will indulge in presumptions and even pure fiction." 198 S.W.2d 883 at 885.

*Id.* at 131 (portions of citations omitted). *See also Hand v. Errington*, 242 S.W. 722, 723–24 (Tex.Comm.App.1922) (where property of owner was wrongfully sold by another, constructive trust followed the property or its proceeds).

*Meadows* is also instructive because the Texas Court there "[agreed] that a constructive trust on unidentifiable cash proceeds is inappropriate. *Even so*, the award of a cash judgment to fully compensate [the injured party] is within the equitable powers of the court. See Restatement of Restitution § 160, comment *d* at 644." *Id.* at 129–130.

We feel that under constructive trust principles, Texas law may afford some relief so that the Osborns' appeal is not moot. Hence the motion to dismiss the appeal for mootness will be denied.

## IV. The Denial of Leave to Amend Under Bankruptcy Rule 1009

### A

■ We turn now to the Debtors' claim of error in the denial of leave to amend under Bankruptcy Rule 1009. The order of May 23, 1990, of the bankruptcy court identified two issues raised by the pleadings underlying the April 1990 trial on the Motion to Determine Domicile filed by the Debtors. Those issues were: (a) "whether the Debtors may amend their Schedule of Exemptions B–4

---

**8.** No question is raised by the Osborns as to the good faith status of the purchaser of the Texas realty.

**9.** While we agree with the Debtors that a stay is not a prerequisite to an appeal, in some situations failure to obtain a stay pending appeal will

render the case moot because the action taken in reliance on the lower court's decree is of a character that can not be reversed. *See In re Sewanee Land, Coal & Cattle, Inc.*, 735 F.2d 1294, 1295 (11th Cir.1984) (citing 9 J. Moore, Federal Practice ¶ 208.03 at 8–10 (2d ed.1979)).

under the facts and circumstances of this case;" and (b) whether, under "the equities and circumstances of this case," the Debtors should be allowed to claim the Texas property as homestead and therefore exempt.

The bankruptcy judge held that the Debtors should not be allowed to claim the Texas realty as homestead. The judge reasoned that the Debtors must be bound by their actions and statements made in this bankruptcy proceeding, and stated that "[c]learly the debtors have misled their creditors as to their place of domicile and residence." Order at 8. The order specifically noted Mr. Osborn's testimony at the creditors' meeting in March 1988, R. 177–78, that "affirmatively expressed his intention to claim the Oklahoma property as homestead." Order at 5. The judge said he could "localize" the offensive conduct of the Debtors by disallowing the homestead on the Texas property, while allowing the exemption of the remaining property listed on the Debtors' amended schedules. The judge noted the necessary elements for equitable estoppel: concealment of facts amounting to a false representation; an intention or expectation that such acts will be relied on; actual or constructive knowledge of the true facts by the wrongdoer; and reliance on misrepresentations causing the innocent party to change its position to its substantial detriment. Order at 8.

The judge concluded that the Debtors had clearly misrepresented to the court and all creditors of the estate their domicile and residence. Order at 9. The Debtors constructively, if not actually, knew their true residence and domicile while not disclosing the information to the creditors. The Bank and all other creditors relied on the representations of the Debtors to their prejudice. *Id.* The judge found that the Debtors' actions in the bankruptcy proceeding served to prejudice the Bank "at least in the amount of the loss realized from the sale of the Bank's collateral/cattle and the representations made in their Schedules, at the meeting of creditors and the hearing on the cash collateral issues." Order at 8.

As a result, the judge said he could not allow the Debtors now to claim a homestead exemption on the Texas realty. *Id.* at 9. Although the judge expressed a somewhat different view with respect to Mrs. Osborn, Order at 9–10, the judge concluded that both Mr. and Mrs. Osborn should not be allowed the Texas homestead exemption.

**B**

The right to amend petitions, lists and schedules in the bankruptcy proceeding is governed by Rule 1009, which provides:

(a) General Right to Amend. A voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or Chapter 13 Statement *may be amended by the debtor as a matter of course at any time before the case is closed.* The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and hearing the court may order any voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or Chapter 13 Statement to be amended and the clerk shall give notice of the amendment to entities designated by the court. The amendment shall be filed in the same number as required of the original.

(Emphasis added).

The history of the rule is instructive. Rule 1009 replaced Rule 110 in 1983, but followed its language and the policy of allowing a debtor to amend schedules "as a matter of course" at any time before the case is closed. *See* 1983 Advisory Committee Notes to Rule 1009 ("This rule continues the permissive approach adopted by former Bankruptcy Rule 110 to amendments of voluntary petitions and accompanying papers.")

Rule 110, however, made a significant change from the old General Order 11, which was in effect prior to 1973. General Order 11 had provided that the court "may allow amendments to the ... schedules on application of the petitioner.... In the application ... the petition shall state the cause of the error in the [schedules] originally filed." Thus, General Order 11 gave the court discretion to deny an amendment if the debtor did not show good cause for the omission. This view was not adopted by Rule 110, which superseded General Order 11 on October 1, 1973. The comment of the Advisory

Committee on Bankruptcy Rules reveals that Rule 110 was intended to end the discretion exercised by the bankruptcy courts under General Order 11; the new Rule obliged the courts to allow amendments "as a matter of course." *See In re Gershenbaum*, 598 F.2d 779, 780–81 (3d Cir.1979) (discussing history of Rule 110). Cases interpreting Rule 1009, like those interpreting the old Rule 110, have generally followed the reasoning in *Gershenbaum*. *See, e.g., In re Brown*, 56 B.R. 954, 957–58 (Bankr.E.D.Mich.1986).

The Tenth Circuit case of *Redmond v. Tuttle*, 698 F.2d 414 (10th Cir.1983), addressed the amendment issue in the context of exempt property schedules in pending cases. It followed *Gershenbaum* in holding that under Rule 110, the debtor must be allowed to amend to claim exemptions "as a matter of course ... if the case has not been closed." *Id.* at 416–417. The fact that *Redmond* was decided under Rule 110 rather than 1009 does not render it inapposite. As the Sixth Circuit held the next year, just after Rule 1009 took effect, "Rule 110 has been adopted without substantive change as Rule 1009 of the (new) Federal Rules of Bankruptcy Procedure, effective August 1, 1983." *Lucius v. McLemore*, 741 F.2d 125, 126–27 (6th Cir.1984).

Here, the bankruptcy case was not closed. Under Rule 1009 it appears that the Debtors could still amend as a matter of course. However, after *Redmond*, we held that there are exceptions to the right to amend. "An amendment may be denied, however, if there is bad faith by the debtor or prejudice to the creditor." *In re Calder*, 973 F.2d 862, 867–68 (10th Cir.1992). In *Calder*, we cited *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986) (stating that prejudice involves "harm to the creditor's litigating position because of some detrimental reliance on the debtor's initial position."). The showing of prejudice required to deny an amendment under Rule 1009 has been construed to require that the prejudice to the creditor outweigh the prejudice to the debtor caused by the denial of the opportunity to amend. *See In re Brown*, 56 B.R. at 957–58.

The court in *Brown* examined *In re Doan*, 672 F.2d 831 (11th Cir.1982), and determined

that a mere showing of some prejudice could not, in the interest of justice and fairness, automatically trigger denial of amendment. *Id.* at 958 & n. 11. In the instant case, the showing of prejudice made by the objecting creditor was not sufficient to justify a denial of amendment under Rule 1009. The facts concerning relative prejudice to the Bank and to the Debtors by rejection of the amendment were not developed.

The bankruptcy court's order here is not clear whether there was merely a procedural denial of amendment, or whether the homestead claim was rejected on the merits. In any event we hold that, insofar as the bankruptcy court's order was a denial of the procedural right to amend, the ruling was in error. That is not the end of the matter, however. "Whether the claims of exemption contained in that amendment will be approved if an interested party timely objects, however, is a separate issue." *Redmond*, 698 F.2d at 417.[10] We next turn to that issue.

## V. The Merits of the Estoppel Issue

On the merits of the estoppel issue, the Debtors strenuously argue that, under Texas law, there can be no estoppel to claim a homestead in circumstances like these. The merits of the claimed homestead exemption are governed by Texas law since the Debtors elected the state exemption scheme authorized by the Bankruptcy Code. *See* 11 U.S.C. § 522(b). The Texas Constitution forcefully pronounces Texas policy protecting the homestead and the homestead exemption:

> The homestead of a family ... shall be, and is hereby protected from forced sale, for the payment of all debts ... [with certain exemptions not relevant here]. No mortgage, trust deed, or other lien on the homestead shall ever be valid ... [with certain exceptions not relevant here]. All pretended sales of the homestead involving any condition of defeasance shall be void.

Tex.Const. art. XVI § 50.

The Debtors here rely on the formidable protection given to their homestead rights and cases vindicating those rights. They point to *In re Niland* which held:

**10.** As noted earlier, the Bank did make timely objection to the assertion of the Texas homestead by the Debtors.

We think that Texas law is clear that a homestead claimant is not estopped to assert his homestead rights in property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property.

*Niland,* 825 F.2d at 808. The Fifth Circuit based this conclusion on the Texas constitutional and statutory protection of homesteads, as well as the long line of cases following *Texas Land & Loan Co. v. Blalock,* 76 Tex. 85, 13 S.W. 12 (1890), which refused to estop homestead claimants based on representations they made to lenders. *See also In re Daves,* 770 F.2d 1363, 1369 (5th Cir. 1985); *In re Moody,* 77 B.R. 566, 576 (S.D.Tex.1987), *aff'd,* 862 F.2d 1194 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992).

There is here, however, another facet of Texas law concerning estoppel to be considered. As shown in the findings of the bankruptcy judge, affirmed by the district court, Mr. Osborn made repeated representations *in* the judicial proceedings themselves that he was claiming the Oklahoma property in Bryan County as his homestead. The district judge quoted the bankruptcy judge's finding that here "Debtors misrepresented *to the court and the creditors* their domicile and residence, and that they expected *the court and creditors* to rely upon their representations until such time as it was beneficial to assert otherwise." Memorandum Opinion at 2–3 (emphasis added). In fact, in asserting his Oklahoma homestead claim, Mr. Osborn testified in the earlier Chapter 12 creditors' meeting in March 1988 that he and his wife were living on the Oklahoma property. R. 178.

These representations made in the judicial proceeding here are distinguishable from

those made in *Niland* and other cases relied on by the Osborns. Those cases refer to affidavits and other actions *outside* of the judicial proceedings. *See, e.g., Niland,* 825 F.2d at 803–04. Niland signed a false affidavit identifying a condominium as his homestead to obtain a loan from a savings and loan association. The association therefore accepted Niland's actual homestead on "the Miron Drive property" as security. *Id.* at 803. Niland then approached another savings and loan association and gave it a "Homestead Affidavit and Designation," claiming the condominium again as his homestead and disclaiming any homestead right in the Miron property, Niland's actual homestead. That association relied on this affidavit and loaned Niland $300,000, obtaining a deed of trust on the Miron property, which actually included Niland's homestead. *Id.* at 804. The Fifth Circuit rejected a claim that Niland be estopped to claim his homestead in the Miron property. It held that Texas law is clear that a homestead claimant "is not estopped to assert his homestead rights in property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property." *Id.* at 808.

In light of the representations repeatedly made in the bankruptcy proceedings, we feel that the estoppel claim here is distinguishable from that made in *Niland* and cases like it and is stronger. The doctrine of judicial estoppel must be considered as it is recognized in Texas. *See Miller v. Mac Gann,* 842 S.W.2d 641 (Tex.1992); *Pako Corp. v. Thomas,* 855 S.W.2d 215, 218 (Tex.Ct.App.1993) (stating elements of judicial estoppel). *See also Davis v. Wakelee,* 156 U.S. 680, 689–91, 15 S.Ct. 555, 558–59, 39 L.Ed. 578 (1895) (applying judicial estoppel against a party assuming a position contrary to that taken in an earlier proceeding).[11] In *Miller v. Mac*

11. In a federal question case, we rejected the doctrine of judicial estoppel. *See United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986). *See also Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1520 n. 10 (10th Cir.1991). However, where state law substantively controls, as here, we have applied the law of the state in question. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1363 (10th Cir.1989); *see also Ellis v. Arkansas Louisiana Gas Co.,* 609 F.2d 436, 440–41 (10th Cir.1979) (in diversity

case, Oklahoma principles of judicial estoppel were followed in holding that judicial estoppel did not apply), *cert. denied,* 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980). Other circuits have applied state judicial estoppel law in like circumstances. *See, e.g., Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 608–09 (8th Cir.1993); *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980); *but see Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167–68 n. 4 (4th Cir. 1982) (applying federal judicial estoppel law in diversity case).

*Gann*, the Supreme Court of Texas clearly stated:

> The applicability of judicial estoppel is not limited to oral testimony, but applies with equal force to any sworn statement—whether oral or written—made in the course of a judicial proceeding.

842 S.W.2d at 641.

██ We feel that a colorable claim of estoppel is made against the Osborns. Therefore, we consider now whether the claim of estoppel asserted by the Bank against the Osborns should prevail, focusing first on Mrs. Osborn.

The bankruptcy judge recognized a difference in the positions of the Osborns with respect to estoppel. He stated:

> E. Although the evidence indicates that Debtor Roma Lou Osborn, may not have been as integrally involved in the misrepresentations made, she benefitted from the entry of the order allowing use of cash collateral and which prejudiced the Bank. Her failure to attend the meeting of creditors or to otherwise consult with her attorney is not sufficiently exculpatory to allow her claim of exemption to attach to the Texas realty as well. As a result, Mrs. Osborn shall be bound by this Court's decision also.

Order at 9–10.

██ While it may be true that Mrs. Osborn may have benefited from the entry of the cash collateral order, our examination of the record leads us to conclude that the requirements for estoppel are not met as to Mrs. Osborn. Under Texas law, such estoppel requires a "deliberate, clear, and unequivocal" statement that is contrary to an essential fact. *Pako Corp.*, 855 S.W.2d at 218 (citing *Griffin v. Superior Ins. Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (1960)). No estoppel will arise unless "the hypothesis of mere mistake" has been eliminated. *United States Fidelity & Guar. v. Carr*, 242 S.W.2d 224, 228–29 (Tex.Civ.App.1951). Here, the only "statements" by Mrs. Osborn which are arguably contrary to the Osborns' Texas homestead claim were the bankruptcy petition and the verified schedules, which she signed and which claimed a homestead valued at $70,000 and citing "31 Okl St. Ann § 31 et sq." R. at 19, 30, 35, 39. There is no

showing of a deliberate misrepresentation that satisfies the strict Texas requirements. For example, the bankruptcy schedules which she signed described real property at "10818 Lake June Rd Dallas, Tx" with a market value of $70,000. This seems to link the real property to the homestead claim valued at $70,000. *See* R. at 28. Moreover, there is a separate listing of real property of "498 Acres" valued at $238,950, which seems to point to the much larger acreage of Oklahoma real estate. In light of these facts, and the ambiguous citation to Oklahoma law, there is no showing sufficient to remove the hypothesis of mere mistake. *See Whisenhunt v. Weaver*, 448 S.W.2d 158, 161 (Tex. Civ.App.1969) (where party was layman and had not been informed of the legal effect of the words he used to answer question posed by the court, party was not bound by statment).

██ We turn now to the viability of the estoppel claim against Mr. Osborn. Under Texas law, the Fifth Circuit has noted that for an estoppel to be binding against the homestead rights protected by the Texas Constitution, the acts or omissions alleged to constitute estoppel must be those of *both* the husband and the wife; if the wife is not estopped to claim the homestead, the husband cannot be. *In re Daves*, 770 F.2d at 1369 (citing *Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847, 851 (1942), and *Lincoln v. Bennett*, 156 S.W.2d 504, 507 (Tex. 1941)). It has long been the rule in Texas that estoppel must be based on the acts of *both* the husband and wife. *See Martin v. Astin*, 295 S.W. 584 (Tex.Comm.App.1927) (judgment entered by the Supreme Court of Texas as recommended by the Commission on Appeals' opinion). In rejecting the claim of estoppel against the homestead claimants, in *Martin* it was noted that the wife "was not present and knew nothing of such statements and representations of her husband." *Id.* at 586. The court concluded that:

> [T]he husband, because of his fraudulent conduct to which the wife is not party or privy, cannot be estopped from asserting the homestead rights of himself and wife; which rights necessarily embrace their title or interest in the property . . . . Martin, as

head of the family, cannot be estopped from defending the family home, even as against the effects of his own wrongful conduct.

*Id.* at 587. For these reasons, we hold that the rejection of the homestead claim of the Osborns respecting the Texas property was in error.

As noted in Part III, federal law expressed in 11 U.S.C. § 363(m) bars relief for the Osborns in the form of rescission or setting aside the sale of the Texas realty because authorization for the sale and the sale itself were not stayed pending appeal. In light of the Supremacy Clause, Art. VI, cl. 2, United States Constitution, this federal bar prevails over Texas law which might otherwise support such rescissional relief for the Osborns. *See, e.g., McLaren v. Jones,* 89 Tex. 131, 33 S.W. 849, 851 (1896). However, we have noted earlier the broad equitable relief available under Texas constructive trust principles, and the availability of such relief must be considered.

We feel the fashioning of such a remedy should first be considered by the bankruptcy judge. Moreover, the present record is inadequate for the making of a determination about possible relief for the Osborns, and for the weighing of the equities relating to impressing a trust on the proceeds from the sale of the Texas property or the extent of monetary relief that should be given to the Osborns from those proceeds or from the party that received them. The bankruptcy court should conduct proceedings to consider the equities and the fashioning of relief, consistent with this opinion.[12]

Accordingly, the motion to dismiss the appeal is **DENIED;** the order denying the homestead exemption claim of the Osborns is **REVERSED;** and the case is **REMANDED** for further remand to the bankruptcy court for proceedings in accord with this opinion.

## ORDER ON REHEARING

June 24, 1994

On consideration of the petition for rehearing of appellee Durant Bank & Trust Company (the Bank), 24 F.3d 1199, the court finds and concludes as follows:

The Bank petitions for rehearing on the single issue of mootness. Having lost on this issue, the Bank now brings to our attention several orders of the bankruptcy court which it contends render this appeal moot.[1] The Bank says that because distributions have been made without objection, and the proceeds of the sale of the Osborns' homestead have been commingled with other funds, there is no *res* that could be recovered and "there is absolutely no means by which any relief can be afforded the Appellants." Petition for Rehearing at 3.

The Bank cites no Texas, federal or other authority in support of its dogmatic position. Our opinion recognized that the sale itself of the Osborns' homestead is protected by § 363(m) of the Bankruptcy Code from being set aside.[2] This, however, does not destroy the possibility of the Osborns obtaining other equitable relief due to the loss of their homestead, which had the strong protection of the Texas Constitution. For example, Texas has long recognized "the flexibility of the constructive trust remedy...." *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex.1974) (citing *Magee v. Young,* 145 Tex. 485, 198 S.W.2d 883 (1946)). In *Meadows* the Texas Supreme Court stated:

> Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in

---

12. In connection with the Texas property, the court may consider whether an urban or rural homestead was involved and the extent of the homestead.

1. The reports, notices, and orders submitted all occurred more than a year before the Bank informed us of them. As the Supreme Court has noted, when a development occurs that "could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court *without delay." See Tiverton Board of License Commissioners v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985) (per curiam) (emphasis in original).

2. The Osborns failed to meet payments required to continue in force a stay of the sale of their Texas homestead.

keeping with basic principles of equity and justice.... A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another.... Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted.

*Meadows,* 516 S.W.2d at 131.

When a parol trust is impressed, the rights which are protected are not destroyed by commingling, as the Bank contends. Indeed, the imposition of a trust "may properly be grounded on the doctrine of commingling.... 'As a general rule the cestui que trust's equitable right of recovery is not destroyed by reason of the fact that the trustee has so commingled the trust property with his own property that it is impossible particularly to identify the trust property....'" *Eaton v. Husted,* 141 Tex. 349, 172 S.W.2d 493, 498 (1943) (citing 3 *Pomeroy, Equity Jurisprudence* § 1076 (4th ed.), and *Perry, Trusts & Trustees* § 447 (6th ed.), and quoting 65 C.J. § 899). The beneficiaries may follow the trust property, and they have sufficiently traced their interests when they identify properties in which their funds have been invested. *See Boettcher v. Means,* 201 S.W.2d 255, 257 (Tex.Civ.App.1947); *see also Sibley v. Sibley,* 286 S.W.2d 657, 659 (Tex. Civ.App.1955); *Farrow v. Farrow,* 238 S.W.2d 255, 256 (Tex.Civ.App.1951).

We merely point out that there is a possibility of equitable relief. It is only if there is no such possibility that the appeal should be dismissed as moot. *See Church of Scientology of California v. United States,* —— U.S. ——, —— – ——, 113 S.Ct. 447, 449–450, 121 L.Ed.2d 313 (1992) (if an event occurs that makes it impossible to grant "any effectual relief whatever" to a prevailing party, the appeal must be dismissed) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 132–33, 40 L.Ed. 293 (1895)). We do not decide that the Osborns have a definite entitlement

to particular equitable or other relief, and we need not do so to dispose of the claim of mootness. This is not a trial court for taking evidence or making discretionary disposition of such claims for relief. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 634, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953) ("This surely is a question better addressed to the discretion of the trial court."). The determination whether the Osborns may be entitled to any relief because of the loss of their Texas homestead should be made by the bankruptcy court, or perhaps another trial court in a collateral action, where any further claim by the Osborns for relief should be heard and decided in the first instance.[3] By merely showing the developments indicated in the petition for rehearing, the Bank has not demonstrated that it is impossible that the courts below "can fashion *some* form of meaningful relief in circumstances such as these." *Church of Scientology of California,* —— U.S. at ——, 113 S.Ct. at 450 (emphasis in original).

For these reasons and for those stated in the discussion of mootness in our opinion of May 13, 1994, the petition for rehearing is DENIED.

---

**3.** In their Objection to Motion to Dismiss filed in this court at 2, the Osborns suggest that they would have an entitlement to recover the value of

their homestead from the proceeds, although the property has been sold.