UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

In re: CSI ENTERPRISES, INC.;
ENERGY FUELS, LTD.; ENERGY
FUELS EXPLORATION COMPANY;
NUEXCO TRADING CORP.,

Debtors,

No. 98-1478
(D. Ct. No. 98-Z-661)
(D. Colo.)

--------------------------------------

SALIM INVESTMENTS, LTD.,

Plaintiff - Appellant,

v.

OREN LEE BENTON,

Defendant - Appellee.

ORDER
Filed November 7, 2000

Before **TACHA** , **McKAY** , and **ANDERSON** , Circuit Judges.

This matter is before the court on appellant's motion to correct clerical

errors in the order and judgment dated January 28, 2000. The motion is granted.

A copy of the corrected order and judgment is attached.

Entered for the Court

Patrick Fisher, Clerk of Court

By:
    Keith Nelson
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re: CSI ENTERPRISES, INC.;
ENERGY FUELS, LTD.; ENERGY
FUELS EXPLORATION COMPANY;
NUEXCO TRADING CORP.,

        Debtors,

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

SALIM INVESTMENTS, LTD.,

        Plaintiff - Appellant,

    v.

OREN LEE BENTON,

        Defendant - Appellee.

No. 98-1478
(D. Ct. No. 98-Z-661)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

Plaintiff Salim Investments, Ltd. appeals from the district court's order

affirming the bankruptcy court's determination that 11 U.S.C. § 523(a)(2)(B) does

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

not bar the discharge of debtor Oren Benton's obligation. We exercise jurisdiction pursuant to 28 U.S.C. §§ 158(D) and 1291 and affirm.

## I.

From the mid-1980's to the mid-1990's, Benton controlled a number of business firms with extensive dealings, including a uranium interest and a business equipment leasing company. Concord Services, Inc. (CSI) supplied management services for many of these Benton affiliates. CSI maintained a central cash-management account through which much of the cash earned and spent by the affiliates flowed. Using this account, CSI pooled the affiliates' excess liquidity and directed it to the companies that needed it most.

Pursuant to this cash management system, First Concord Acceptance Corporation (FCAC), Benton's business equipment leasing enterprise, advanced its excess liquidity to CSI on a monthly basis. FCAC's on-hand cash reserves accordingly were limited to those necessary for short-term operations. At the end of the month, CSI repaid the advances by writing a check to FCAC. Certain FCAC audited financial statements and balance sheets characterized the checks receivable from CSI as cash equivalents.

Salim Investments is a Cayman Islands entity owned entirely by Salim Settlement, a Cayman Islands trust. Wahib Binzagr was the trust's settlor and primary beneficiary. Binzagr was also investment advisor to the trust, retained

- 2 -

ultimate authority to appoint or remove all trustees, and could amend the trust with trustee consent. [1]

According to Benton, he and Binzagr met in 1991 or 1992 and developed a personal business relationship. Binzagr purchased shares in certain Benton enterprises and served on the board of directors of one Benton company. By early 1994, Binzagr and Benton had begun discussions concerning a prospective Binzagr investment in FCAC. Benton testified that Binzagr attended one or two FCAC board meetings. In January 1994, Benton sent Binzagr several internal FCAC financial documents for the year 1993.

By late January, Binzagr described himself, by letter, as committed to investing in Benton's leasing company (FCAC). On February 7, 1994, Binzagr advised Benton that the trust (Salim Settlement) would constitute his path of entry into FCAC. He accordingly forwarded certain business papers to the trustees of Salim Settlement. Indosuez Trust Company served as trustee of Salim Settlement during the period at issue. Indosuez Trust's parent company employed Michael Ellis, who acted as trust administrator or effective trustee for Salim Settlement.

Over a brief period in early February, Ellis advised Binzagr, Benton and other concerned parties that the contemplated form of the trust's investment in

---

[1] While plaintiff's assets benefit Binzagr and his family, Binzagr has not participated in this litigation. Defendant moved to compel Binzagr's deposition, but the bankruptcy court denied the motion.

FCAC was not appropriately safe. Specifically, Ellis advised Binzagr that if Benton were forced into bankruptcy, the proposed trust investment would not be adequately secured. Responding to Ellis's concerns about the form of the investment, Binzagr suggested a direct investment in the form of a 25% ownership of FCAC by Salim Investments. Ellis replied to this suggestion the following day. He stated that this direct investment would constitute a special investment made at the instigation of the settlor and primary beneficiary (i.e., Binzagr). Ellis also stated that such an arrangement would be acceptable. He further suggested that Binzagr act as a director of the company in order to represent the interests of the trust. Benton testified that Binzagr later took a seat on FCAC's board of directors.

Ellis testified that, by March 3, he had received certain financial documents concerning FCAC. Ellis also testified that he would have examined the FCAC financial data as an ongoing process and that he relied on such data. He stated that nothing struck him as particularly strange in the documents he reviewed.

Apparently on behalf of Salim Investments, Binzagr signed a stock purchase agreement between Salim Investments and FCAC on March 10, 1994. Binzagr then wired $3.5 million to Benton's bank account to effectuate the purchase. The FCAC stock transfer ledger reflects that, on March 25, 25% of FCAC's shares were transferred from Benton to Salim Investments. Ellis testified

that he played no role in negotiating the final purchase price. Salim Investments apparently did not supply any of the purchase funds.

As a result of events affecting the world uranium market in the early 1990's, several of Benton's business enterprises ran into financial trouble. In 1994, the FCAC controller began to worry that CSI had insufficient cash flow to meet obligations as they came due. By October 1994, CSI had failed to channel called funds to FCAC and, as a result, some FCAC checks were not honored. Although these checks were eventually honored, the insolvency of Benton's other businesses led him to file for bankruptcy in February 1995. Auditors wrote off FCAC's unreturned cash advances to CSI as unrecoverable debt in FCAC's 1994 year-end audit.

In April 1996, Salim Investments filed a complaint in bankruptcy court. Salim requested that the bankruptcy court declare Benton's debts to Salim nondischargeable under 11 U.S.C. § 523(a)(2)(B). [2]

---

[2] Salim actually pled its claim under 11 U.S.C. § 523(a)(2)(A), which excepts from discharge any debt secured by "false pretenses . . . other than a statement respecting the debtor's or an insider's financial condition." However, most of plaintiff's evidence before the bankruptcy court alleged false representations or omissions in FCAC financial statements. Therefore, the bankruptcy court allowed Salim to amend its complaint to conform to the evidence and plead its claim under § 523(a)(2)(B), which concerns false statements in writing.

## II.

Section 523(a)(2)(B)(i)-(iv) provides that a debtor who seeks discharge of debts is not entitled to discharge if the debt was incurred using a written statement (i) that is materially false, (ii) respecting the debtor's or an insider's financial condition, (iii) on which the creditor reasonably relied, and (iv) that the debtor caused to be made or published with the intent to deceive. A plaintiff must prove each of these elements by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991). Exceptions to discharge are narrowly construed, and doubts are resolved in the debtor's favor. <u>Kaspar v. Kaspar</u>, 125 F.3d 1358, 1361 (10th Cir. 1997).

Without deciding whether the FCAC financial statements that Benton sent to Binzagr were materially false or intentionally deceptive, the bankruptcy court found that Salim Investments did not actually rely upon them in acquiring its 25% ownership share in FCAC. Thus, the only issue on appeal is whether Salim Investments relied upon the financial statements.[3]

A bankruptcy court's finding as to reliance on financial information is

---

[3]Section 523(a)(2)(B)(iii) refers to use of a statement in writing "on which the creditor . . . reasonably relied." Reasonable reliance requires actual reliance. <u>Field v. Mans</u>, 516 U.S. 59, 68 (1995) ("Section 523(a)(2)(B) expressly requires not only reasonable reliance but also reliance itself."). The lower courts addressed both actual reliance and reasonableness. Because we find no actual reliance by Salim, we do not address the lower courts' findings concerning reasonableness.

factual in nature, <u>Watson v. Watson</u>, 958 F.2d 977, 978 (1992), and therefore reversible only for clear error, Fed. R. Bankr. P. 8013. We also give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013. "It is especially important to be faithful to the clearly erroneous standard when the bankruptcy court's findings have been upheld by the district court." <u>Osborn v. Durant Bank & Trust Co. (In re Osborn)</u>, 24 F.3d 1199, 1203 (10th Cir. 1994).

The record indicates that Binzagr was committed to investing in FCAC prior to Ellis's involvement on behalf of Salim Investments. Binzagr independently negotiated the transaction with Benton, and Ellis's role was limited to advice on the choice of a particular investment vehicle. Binzagr provided the money for the deal and signed the pertinent documents. He had attended FCAC board meetings and was apparently apprised of its cash-management program. Leading up to the transaction, Ellis did advise Binzagr, but Ellis's consent to the investment was little more than a formality. Binzagr served as investment advisor to the trust, could amend the trust, and possessed ultimate authority to appoint and remove all trustees. The bankruptcy court, therefore, was not clearly erroneous in holding that Salim Investments did not actually rely upon FCAC financial statements when Binzagr, who instigated and pressed for the FCAC investment, purchased an ownership interest in the firm on Salim's behalf.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge