TACHA, Circuit Judge.
Systemcare, Inc. (“Systemcare”) filed this action alleging that Wang Laboratories, Inc. (“Wang”) violated the Sherman Act, 15 U.S.C. § 1, by illegally tying the sale of its software support services to the purchase of its hardware support services. The district court granted summary judgment in favor of Wang based upon this court’s opinion in City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir.), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). Systemcare, Inc. v. Wang Lab., Inc., 787 F.Supp. 179 (D.Colo.1992). Systemcare appeals, maintaining that (1) we should overrule Chanute, (2) the Supreme Court effectively overruled Chanute in Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), and (3) Chanute is factually distinguishable. Wang contends that its intervening bankruptcy proceedings left the district court without jurisdiction over this case and that, consequently, we are without jurisdiction to review it on appeal. We hold that the *467 district court did have jurisdiction over the ease, and exercise our jurisdiction under 28 U.S.C. § 1291 to affirm.
Background
Wang manufactured “VS” minicomputers, and designed and copyrighted a software system for use with these computers. Wang now offers both hardware and software support services for its computers. The hardware support services involve maintenance and repair of computer equipment. The software support services include software maintenance bulletins, software updates, on-site and telephone technical assistance, remote link assistance, and the right to copy the software. Because Wang owns the copyright on its software, it alone can provide several of these software services.
Systemeare, an independent service organization, services computer equipment that it does not manufacture. Systemeare services Wang computer hardware in Colorado. In doing so, Systemeare competes with Wang in the provision of hardware support services for VS computers.
Beginning in 1985, Wang offered its minicomputer users a package of hardware and software support services called Wang Software Services (‘WSS”). Under the WSS contract, the customer must subscribe to Wang’s hardware support program in order to obtain Wang’s software support services. Many of Wang’s customers have entered into WSS contracts with Wang. Systemeare alleges that the WSS contracts involve unlawful tying because Wang forces its customers to purchase its hardware support services in order to obtain its software support services.
Wang responds that customers are not compelled to purchase its hardware services with its software services because both types of service are separately available on a “per incident” basis. Systemeare, however, contends that per incident services are as costly as WSS contract services and that per incident customers do not receive the same quality of software support services as WSS customers. Because of these cost and quality differences, customers usually choose the WSS contract over the software services offered on a per incident basis. Thus, according to Systemeare, Wang uses its market power in the software support industry to eliminate competition in the hardware support industry. Systemeare alleges that Wang’s WSS contracts foreclose competition in an otherwise competitive hardware support industry in violation of section 1 of the Sherman Act.
Procedural History
Systemeare filed its complaint against Wang on October 11, 1989, in the United States District Court for the District of Colorado. Wang answered and asserted counterclaims against Systemeare and its president under federal and state trademark infringement law. After discovery closed, Wang moved for summary judgment on the section 1 claim. The district court deferred ruling on the motion and directed both parties to submit briefs regarding a recently-decided Tenth Circuit case, City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir.), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). The district court, relying on Chanute, granted Wang’s motion for summary judgment. Systemcare, Inc. v. Wang Lab., Inc., 787 F.Supp. 179 (D.Colo.1992). Systemeare then moved under Fed. R. Civ. Proc. 59(e) to alter or amend judgment.
On August 18,1992, prior to oral argument on Systemcare’s Rule 59(e) motion, Wang filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Massachusetts. All judicial proceedings against Wang, including Systemcare’s Rule 59(e) motion, were automatically stayed pursuant to 11 U.S.C. § 362(a). In keeping with that automatic stay, the Colorado district court entered an order on September 4, 1992, staying the litigation against Wang in the District of Colorado. On December 10, 1992, the Colorado district court retired the case from its active docket. Wang continued to operate its business as a debtor-in-possession pursuant to 11 U.S.C. § 1107.
Systemeare then turned its attention to the bankruptcy court. On February 5, 1993, Systemeare filed a proof of claim against the *468 bankruptcy estate. The proof of claim specifically identified the pending Colorado case, stated that the debt to Systemcare was confined to the period from 1986 to the date of Wang’s bankruptcy petition, and valued the claim at $1,548,000. Wang valued the claim at zero. On March 4, 1993, Systemcare filed a motion pursuant to 11 U.S.C. § 362(d)(1) for partial relief from the automatic stay in order to pursue injunctive relief in the Colorado case. The bankruptcy court denied that motion in a minute order dated May 6, 1993, and the Massachusetts District Court affirmed that decision on January 4,1996.
Systemcare filed a second motion for relief from the automatic stay with the bankruptcy court on October 26, 1993. In response, Wang opposed the motion for relief from the stay and moved for summary judgment on Systemcare’s claim against the bankruptcy estate. By minute order dated December 20, 1993, the bankruptcy court denied System-care’s second motion for relief from the stay and granted Wang’s motion for summary judgment on Systemcare’s claim. System-care’s appeal of that order is currently pending before the Massachusetts district court.
Wang’s plan of reorganization was confirmed on September 21, 1993. The confirmation order discharged Wang’s debts and permanently enjoined all proceedings with respect to such debts. The discharge ended the automatic stay. 11 U.S.C. § 362(c)(2). Over a year later, on September 26, 1994, Systemcare moved the Colorado district court to reactivate the case and rule on Systemcare’s still-pending Rule 59(e) motion. On December 15, 1994, the Colorado district court granted Systemcare’s motion to reactivate and denied Systemcare’s pending Rule 59(e) motion, thus rendering a final judgment. Systemcare now appeals that decision.
Jurisdiction
Wang contends that the Colorado district court lacked jurisdiction to reactivate and render judgment in this ease. We disagree. Wang initially argues that its bankruptcy automatically stayed all pre-petition lawsuits against Wang. The filing of Wang’s bankruptcy petition automatically stayed “the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title....” 11 U.S.C. § 362(a)(1). In accordance with the automatic stay, the Colorado district court stayed and eventually removed the case from its active docket. The district court only reactivated the case after the expiration of the § 362(a) stay, and thus the automatic stay presented no bar to the court’s jurisdiction.
Wang further maintains that upon consummation of its plan of reorganization, the bankruptcy court replaced the automatic stay with a permanent injunction prohibiting all prepetition lawsuits. Wang’s plan and the bankruptcy court order confirming that plan, consistent with 11 U.S.C. § 524, discharged Wang’s pre-confirmation debts. Section X.B.2.d of the plan states:
Except as expressly provided in the Plan, WLI [Wang Laboratories, Inc.] is discharged effective upon the Confirmation Date from any “debt” (as that term is defined in section 101(12) of the Bankruptcy Code), and WLI’s liability in respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, or that arose from any agreement of WLI that has either been assumed or rejected in the Chapter 11 Case or pursuant to the Plan, or obligation of WLI incurred before the Confirmation Date, or from any conduct of WLI prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date.
The bankruptcy court order confirming the plan recites the above-quoted language, and then goes on to state, “The commencement or continuation of any action ... with respect to any debt discharged hereunder, or any act to collect, recover, or offset any debt discharged hereunder as a personal liability of *469 WLI, or from properties of WLI, shall be, and hereby are, forever enjoined.” In re Wang Lab., Inc., No. 92-18525-WHC (Bankr.D.Mass. May 25, 1994) (order confirming reorganization plan). Wang contends that this permanent injunction continues the prohibitions of the automatic stay and thus deprived the district court of jurisdiction to rule on Systemcare’s Rule 59(e) motion.
Wang’s argument is misguided, however, because the scope of the permanent injunction is not coextensive with the scope of the automatic stay. Section 362(a) automatically stays the commencement or continuation of all judicial proceedings (with a few statutory exceptions) against the debtor. The permanent injunction in the confirmation order, on the other hand, only enjoins proceedings with respect to discharged debts. See 11 U.S.C. § 524(a)(2). Discharged debts are those debts that arose before the date of the confirmation. See 11 U.S.C. § 1141(d). Thus the plan of reorganization and the order confirming it discharged all pre-confirmation debts, and the attendant permanent injunction prohibits all actions with respect to those debts.
If, as Wang maintains, the bankruptcy court’s permanent injunction precludes all forms of relief that can be granted to Systemcare, then this case is moot and both we and the district court lack jurisdiction. See Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1203 (10th Cir.1994). The pivotal question, then, is whether Systemcare’s lawsuit is an action with respect to a debt that arose before confirmation of the bankruptcy plan. Systemcare’s lawsuit requests both damages and injunctive relief. To the extent that the lawsuit seeks damages for Wang’s pre-confirmation behavior, it is clearly prohibited by the permanent injunction. However, Systemcare is also pursuing this action to obtain relief for Wang’s ongoing behavior that allegedly violates the Sherman Act. Thus, to the extent that System-care’s lawsuit seeks to recover damages for post-confirmation behavior and to enjoin Wang’s tying arrangement, it does not fall within the scope of the permanent injunction. Because the bankruptcy court’s permanent injunction does not preclude all forms of relief in this case, the case is not moot and both we and the Colorado district court may properly exercise jurisdiction over the merits of the action.
Section 1 of the Sherman Act
We review the district court’s grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir.1995). Section 1 of the Sherman Act prohibits “every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce....” 15 U.S.C. § 1. Thus, in order to violate Section 1, there must be (1) concerted action in the form of a contract, combination, or conspiracy and (2) restraint of trade. The district court held that Systemcare failed to allege the requisite concerted action as defined in City of Chanute v. Williams Natural Gas Co., 955 F.2d 641 (10th Cir.), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). We agree.
Although Chanute has a long and complex history, the facts relevant to our decision are straightforward. The defendant, Williams Natural Gas Co. (‘Williams”), both supplied and transported natural gas. Chanute, 955 F.2d at 646. For approximately one year, Williams refused to transport gas to eight cities, including Chanute, Kansas, unless the cities also purchased Williams’s gas (or the gas of several other companies on an approved list). Id. The cities purchased gas from Williams, and then alleged that the arrangement violated sections 1 and 2 of the Sherman Act by tying the purchase of Williams’s transportation services to the purchase of Williams’s gas. Id.
This court found that the contractual relationship between Williams and the cities was not sufficient to fulfill the concerted action requirement under section 1. Id. at 649-51. We specifically rejected the proposition that the supply and transportation contracts between Williams and its customers amounted to concerted action:
The Cities have only brought evidence that establishes Williams tied its natural gas to *470 its transportation facilities. The Cities have not shown Williams acted in concert with any other entity. The Cities name only one defendant. The other parties to the allegedly illegal contracts to establish the conspiracy are the Cities themselves. We conclude that the Cities have failed to make the requisite preliminary showing of a conspiracy to go forth with their tying claims under § 1 of the Sherman Act and find summary judgment is appropriate.
Id. at 650-51. Thus, according to Chanute, a tying arrangement imposed by a single entity is not proscribed by section 1 of the Sherman Act, even if that arrangement is embodied in a contract between seller and buyer. Instead, a plaintiff must establish a conspiracy between two or more entities to force such an agreement upon a third party. In this case, there is no evidence that Wang allied itself with any other party when it conditioned the sales of its software support services on the purchase of its hardware support services. Because Systemcare has failed to prove concerted action as defined in Chanute, we must affirm the judgment of the district court.
Systemcare makes three arguments against our application of Chanute. First, it asks that we overrule Chanute in light of Supreme Court analysis that appears to implicitly assume that tying contracts meet the concerted action requirement of section 1. We cannot, however, overrule a decision of another panel of this court. In re Smith, 10 F.3d 723, 724 (10th Cir.1993), cert. denied, — U.S. -, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994). ‘We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.” Id.
Second, Systemcare argues that the Supreme Court effectively overruled Chanute in Eastman Kodak Co. v. Image Technical Serv., Inc., 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). The plaintiffs in Kodak were independent service organizations (ISOs) that serviced Kodak copiers. Kodak also serviced its own copiers. The ISOs alleged that Kodak violated section 1 of the Sherman Act by tying the sale of replacement parts to the sale of Kodak servicing, thereby making it difficult for the ISOs to compete with Kodak in the service industry. Id. at 459, 112 S.Ct. at 2078. The Supreme Court found that the ISOs had alleged sufficient facts to escape summary judgment. Id. at 485-86, 112 S.Ct. at 2091-92.
Although these facts are similar to those in our case, Kodak does not overrule Chanute. The plaintiffs in Kodak alleged that Kodak reached agreements with other independent companies that manufactured Kodak parts to bar the sale of replacement parts to the plaintiffs. Id. at 458, 112 S.Ct. at 2077-78. Such a conspiracy among multiple parties is precisely what Systemcare has failed to allege in this case.
Systemcare also points to dicta in Kodak that supports its position. The Supreme Court noted the following: “Assuming, arguendo, that Kodak’s refusal to sell parts to any company providing service can be characterized as a unilateral refusal to deal, its alleged sale of parts to third parties on condition that they buy service from Kodak is not.” Id. at 463 n. 8, 112 S.Ct. at 2080 n. 8. While this dicta does provide oblique support for Systemcare’s position, it is several steps away from overruling the rule established in Chanute.
Finally, both Systemcare and the United States as amicus curiae ask that we distinguish Chanute. Systemcare’s attempt to distinguish Chanute in its brief and its counsel’s assertion at oral argument that “any case can be distinguished” are unpersuasive. The United States argues that the Chanute majority’s holding that the contracts were insufficient to make the “requisite ... showing of a conspiracy,” 955 F.2d at 650, was actually an observation that the contracts did not constitute tying agreements. We find this interpretation to be unnecessarily tortured, and see no intellectually honest way to distinguish Chanute from the facts in this case. Systemcare has failed to provide evidence that creates a genuine issue of material fact as to the existence of concerted action as defined by governing Tenth Circuit law. We must therefore affirm the district court’s grant of summary judgment on the section 1 claim.
*471 Conclusion
Although Systemcare is enjoined from pursuing monetary damages relating to Wang’s behavior before confirmation of its plan of reorganization, the district court properly exercised jurisdiction over Systemcare’s attempt to recover damages for post-confirmation behavior and to enjoin Wang’s tying arrangement. We find, however, that Systemcare has failed to allege the existence of concerted action as defined in Chanute, and therefore AFFIRM.